**In the Matter of Lee J. LANDESBERG.
A Member of the Bar of the District of
Columbia Court of Appeals.**

No. 86–427.

District of Columbia Court of Appeals.

Submitted May 29, 1986.
Decided Aug. 12, 1986.[1]

Before NEWMAN, BELSON and ROGERS, Associate Judges.

PER CURIAM:

█ The court has before it the Report and Recommendation of the Board on Professional Responsibility that Respondent Lee Landesberg neglected a case and mis-represented to the client in violation of DR 6–101(A)(3), 2–106(A), and 1–102(A)(4), and should be suspended from the practice of law for 60 days and be directed to repay an unearned fee. Upon review of the record[2] we are satisfied that the findings of fact are supported by substantial evidence, and agree that Respondent's acts and inaction constituted neglect, misrepresentation, and failure to return an unearned fee in violation of these disciplinary rules. We also find that there was clear and convincing evidence Respondent violated DR 9–103(B)(4) when he refused to return the client's file. Finally, we agree with the Board's recommended sanction.

Respondent was charged with violations of DR 6–101(A)(3) (neglect), DR 7–101(A)(1) (intentional failure to seek client's lawful objectives), DR 2–106(A) (retaining an unearned fee), DR 9–103(B)(4) (refusing to return a case file to a client on demand) and DR 1–102(A)(4) (dishonesty, fraud, misrepresentation and deceit). The Board adopted the findings of the Hearing Committee as supported by substantial evidence (Report at 7), and concluded that the facts did not establish Respondent intentionally failed to seek the client's objectives, i.e., that he intended to do nothing in the case, although he did neglect the case. In the Board's view, the evidence of neglect was clear and convincing. In addition to failing to respond to an order to show cause from this court why his client's appeal should not be dismissed as prematurely filed. Respondent was unaware the order had issued because he had failed to notify the court and the client of his new address and did not take sufficient steps to learn about mail which had been delivered to the law firm where he was previously employed. He also made no effort to keep apprised of the status of the case, and failed to remain in contact with the client. When the client

---

1. This case was originally issued as a Memorandum Opinion and Judgment. The Board on Professional Responsibility requested publication and the Division granted the request.

2. Respondent has not filed a brief in this court.

contacted him, he misled the client about the status of the appeal. The Board also found that Respondent misled the client to believe that the law firm and not he personally would represent the client, and had failed to return an unearned fee.

The Board disagreed, however, with the Hearing Committee's conclusion that Respondent had not violated DR 9–103(B)(4) by failing upon request to return the client's file. Since the violation did not affect the Board's recommended sanction, the Board left standing the Committee's finding. We agree with the Board that there is clear and convincing evidence Respondent violated DR 9–103(B)(4). *In re Russell*, 424 A.2d 1087, 1088 (D.C.1980).

 Regarding the appropriate sanction, the Board rejected the Hearing Committee's recommendation that Respondent be suspended from the practice of law for 45 days. Bar Counsel had argued to the Board on Professional Responsibility that a 90–day suspension was appropriate. In view of our standard of review of sanctions recommended by the Board,[3] and finding its recommendation to be consistent with the sanctions imposed in other similar cases, we agree with the Board that Respondent should be suspended for 60 days and return to the client the balance of the unearned fee which he had not repaid ($900) together with the interest paid by the client as a result of borrowing the money to pay Respondent ($300). Rule XI, § 3.

In concluding that 45 days was not appropriate, the Board found guidance in two cases which involved an intentional failure to seek the client's objectives. *In re Knox*, 441 A.2d 265, 268 (D.C.1982) (3 months), and *In re Russell, supra*, 424 A.2d at 1089 (6 months). Although Respondent's behavior did not involve intentional misconduct, the Board concluded that Respondent's material misrepresentation to the client, his

failure to return the file and his failure to return the fee (which he kept for two years after conceding that he had no right to retain it), along with the fact that Respondent has been subject to prior discipline for neglect, required a sanction in excess of 45 days. Because the Board found the client had not been prejudiced by Respondent's neglect or misrepresentation, it concluded that a somewhat shorter suspension is warranted than was imposed in *Knox* and *Russell*. We find the Board's reasoning persuasive, and for the reasons set forth in the Board's Report,[4] we agree this is an appropriate case to require repayment of an unearned fee. Accordingly, it is hereby

ORDERED that Respondent be, and hereby is, suspended from the practice of law for 60 days and shall repay to the client $1200. This Order shall be effective 30 days from the entry of this opinion.

*So Ordered.*

## APPENDIX I

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Docket Nos. 155–83

190–83

IN THE MATTER OF: LEE LANDESBERG, RESPONDENT.

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent, Lee Landesberg, was charged in a petition filed on April 25, 1985 (Docket No. 155–83), with violations of DR 6–101(A)(3) (neglect), DR 7–101(A)(1) (intentional failure to seek client's lawful objectives), DR 2–106(A) (retaining an unearned fee), DR 9–103(B)(4) (refusing to return a case file to a client on demand) and DR 1–102(A)(4) (dishonesty, fraud, misrepre-

---

**3.** Rule XI, § 7(3) of our Rules Governing the Bar provides that the court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record."

**4.** The Board's Report appears as Appendix I to this opinion.

sentation, and deceit). These five charges stemmed from his representation of Hector Germain in connection with an appeal from an adverse paternity determination. The first four of those charges arise from his relationship with Germain. The fifth arises from both his relationship with his former law firm as well as with Germain.[1]

A Hearing was held by Hearing Committee No. 9 on June 18, 1985. The Hearing Committee concluded that Landesburg had neglected the matter and had failed to return an unearned fee. The Hearing Committee also found that Landesburg did not intentionally fail to seek his client's lawful objectives and that there was no meaningful violation of DR 9–103(B)(4) as there was no "case file" to return and because there was an ambiguity in the telephone conversation in which Germain requested return of the file. Finally, the Hearing Committee concluded that Landesberg did make certain misrepresentations to Germain regarding his handling of the appeal but found that the evidence was not sufficiently clear to support the charges that Landesberg had made misrepresentations to his firm. The Hearing Committee recommended that Landesberg be suspended for 45 days but that his right to resume practice be conditioned on his repayment to Germain of the balance of the unearned fee ($900.00) and interest paid by Germain as a result of his borrowing money to pay Landesberg ($300.00).

The Board concurs in the Hearing Committee's finding of facts and conclusions of law with regard to the disciplinary violations. However, the Board recommends that Landesberg be suspended for 60 days rather than 45 days. Additionally, since the Court apparently cannot, under its present rule, condition the right to resume practice following a suspension of one year or less, as such a suspension expires automatically at the end of the period of suspension, see Rule XI, Section 3(2), District of Columbia Court of Appeals Rules Governing the Bar, we recommend that the court, in its order, direct the repayment of these funds to Germain pursuant to Rule XI, Section 3.

## FACTS

Landesberg was an associate with the law firm of Benson, Stein and Braunstein from April 1982 until May 13, 1983. In April 1983 Hector Germain came to see Landesberg to discuss the firm's handling of an appeal from a paternity determination entered against him by the Superior Court on March 31, 1983. According to Germain's testimony, credited by the Hearing Committee, Germain—a cab driver— had met Landesberg when Landesberg was a passenger in his cab some months earlier. Germain had struck up a conversation with Landesberg and had obtained his business card. Germain testified that when he received the adverse paternity determination, he decided to have Landesberg's firm handle the appeal, rather than his trial counsel, H. Edward Chozick, because he had heard from other cab drivers and friends that the firm did good work and because he wanted a firm rather than a sole practitioner to represent him. According to Germain, when he called the firm for an appointment, he asked for Landesberg only because he had Landesberg's card.

Germain met with Landesberg on April 7, 1983. Landesberg told Germain that the firm's fee for handling the appeal would be $1200 plus costs and that the firm would have to have $1000 up front before it would handle the appeal. Germain testified that when he asked Landesberg how to make out the check—to Landesberg or to the firm—Landesberg said it did not matter. Germain gave Landesberg a check in the amount of $1000 made payable to Landes-

1. The petition also charged in Docket No. 190– 83 separate violations centering on another matter. Bar Counsel did not pursue those allegations as the witness was not available at the time of the hearing and, according to the Bar Counsel, would never be available. The Hearing Committee recommended dismissal, and we adopt that recommendation and dismiss Docket No. 190–83.

berg but asked Landesberg to hold it until he could borrow funds to cover the amount.

On April 13, Germain returned to the firm and told Landesberg that he had covered the check. He also signed a retainer agreement on that date. The retainer agreement recites that Landesberg agreed to handle the appeal and refers throughout to Landesberg's services rather than those of the firm. The retainer agreement is on firm letterhead and was typed by Landesberg rather than by his secretary.

When Germain met with Landesberg on April 7, he gave Landesberg a copy of the Superior Court decision in the paternity case. Landesberg also had a telephone conversation with Chozick about the paternity case and made notes about that conversation as well as about his conversations with Germain. Since Landesberg did no substantive work on the case, as we describe more fully below, these materials, together with a notice of appeal, constituted the entire case file.

On May 2, 1983, Landesberg filed a notice of appeal from the paternity determination. Shortly thereafter, an attorney from Corporation Counsel's office called Landesberg and told him that the appeal was premature because no support order had been entered.[2] Landesberg took no further action in connection with the case from that day on.

On May 13, 1983, Landesberg was terminated by the Benson firm. He remained physically in the firm's offices for an additional two to three weeks after which he moved to another location. Landesberg never advised the Court of Appeals of his change of address nor did he notify Germain. Rather, Landesberg relied on an arrangement with Kenneth Braunstein, a partner in the firm, that the firm would forward mail pertaining to his matters to him.

On June 11, 1983, the District of Columbia Court of Appeals entered an order directing Germain to show cause why his appeal should not be dismissed for failure to pay a required filing fee and for failure to take action necessary to perfect his appeal. Landesberg took no action in connection with this order, and the Court dismissed the appeal.

Sometime in June 1983 Germain went to the Benson law firm to pay the balance of his retainer. At that time he learned that Landesberg was no longer employed by the firm. He nevertheless attempted to pay the balance of the retainer and tried to determine who at the firm was handling his case. Braunstein told Germain that they could do no work on this case until they obtained the file and that he should contact Landesberg directly. Germain did so and asked that Landesberg return the file to the Benson firm. Landesberg said that he could not as the case was his (Landesberg's) and that he had done considerable work on it and would handle it to Germain's satisfaction. Germain testified that despite this conversation with Landesberg, he desired that the firm, not Landesberg, handle the appeal.

Several weeks later, Germain called Landesberg to inquire about the status of the case. Landesburg told him that the appeal had been filed and that he was handling it. As Landesberg had not advised the Court of Appeals of his change of address, he had not received the Court's order dismissing the appeal and did not know it had been dismissed.

In late September, Chozick received notice that a support hearing was to be conducted on October 6. Chozick told Germain, and Germain told Landesberg.

---

**2.** Landesberg testified that he asked the Assistant Corporation Counsel, as a courtesy, to advise him when a support order had been entered and that she agreed. The Assistant Corporation Counsel testified that Landesberg did not ask her to so advise him but that had he done so, she would not have agreed to, as she did not wish to be responsible for performing a function that was the responsibility of trial or appellate counsel representing Mr. Germain. The Hearing Committee credited the Assistant Corporation Counsel's testimony and we have no basis for reaching a different credibility determination.

Landesberg offered to represent Germain, but Germain declined the offer. Following the October 6 hearing, Germain and Chozik obtained the Court of Appeals' file and, to Germain's surprise, discovered that the appeal had been dismissed in July. Germain called Landesberg, told him what he had discovered and discharged him. This was the first time Landesberg learned that the appeal had been dismissed. Landesberg sought to persuade Germain that in fact his appeal rights had not been lost since the first appeal had been premature and a new notice of appeal (and a timely one) could be filed following the entry of the support order. He also offered to refund the $1000 fee to Germain on an installment basis. Germain tried on several subsequent occasions to obtain repayment but, with the exception of $100 Landesberg paid to Germain in March 1985, Landesberg had not repaid any money to Germain as of the hearing in this case. Landesberg's explanation for refusing to pay Germain was that Germain had threatened a malpractice suit and, while he was not concerned about a liability finding, he concluded that he would keep the $900 and negotiate repayment in settlement of any malpractice suit that might be filed.

After Germain discharged Landesberg, Braunstein agreed that the Benson firm would represent Germain on appeal for no fee. The firm filed a notice of appeal, but the appeal was not pursued by mutual agreement of Braunstein and Germain after Braunstein concluded that there was no basis for an appeal.

The Hearing Committee found all of these facts as recited above. These facts are supported by substantial evidence in the record taken as a whole, and we adopt them.[3]

## THE DISCIPLINARY VIOLATIONS

The Hearing Committee concluded, and we agree, that the facts do not establish that Landesberg intentionally failed to seek Germain's lawful objectives. While it is true that Landesberg neglected the case as we discuss below, his conduct does not amount to an intentional failure to seek lawful objectives. What the facts show is that after Landesberg filed an untimely notice of appeal, he learned the notice of appeal was untimely and permitted the Court to dismiss it by failing to respond to an order to show cause. Thereafter he did nothing. There is no evidence that, either at the time he began work on the case or at any time during the period of his representation of Germain, he intended to do nothing in the case. Indeed, presumably he intended to pursue the appeal after the entry of a support order.

Turning to the neglect allegation, the evidence is clear and convincing that Landesberg neglected Germain's appeal. If all that were involved was his failure to respond to the court's order to show cause, we would not conclude that Landesberg neglected the matter. While we believe the better practice is for an attorney to respond to an order to show cause even if he agrees that his appeal should be dismissed, it is difficult to conclude that the failure to respond to an order to show cause amounts to neglect *per se*. Here, assuming that

---

**3.** The Hearing Committee was unable to make any findings about Landesberg's relationship with his law firm and his claimed right to represent clients on his own and not through the firm. Both Landesberg and Braunstein testified that there were circumstances where associates were entitled individually to represent clients. Landesberg testified about the specific employment relationship that he had negotiated with the firm's senior partner who hired him. That partner had died prior to the hearing. Braunstein testified as to the general practice of associates handling cases on their own and retaining the fees but was unable to testify about any specific arrangement Landesberg may have had with Benson. In light of the Hearing Committee's view of the facts and our independent review of the record, we conclude that Bar Counsel has not sustained by clear and convincing evidence the allegation that Landesberg engaged in deceit and misrepresentation *vis-a-vis* his law firm in the handling of the Germain case because Bar Counsel has not demonstrated that Landesberg was not entitled to represent clients individually.

Landesberg had known that an order to show cause had issued and determined not to respond to it because he knew the appeal to be premature, his conduct would not amount to neglect. But that is not what happened. Rather, Landesberg did not know an order to show cause had issued. This is so because he did not notify the Court of Appeals of his new address and did not take sufficient steps to learn about his mail delivered to the law firm. Additionally, Landesberg did nothing to keep himself apprised of the status of the case in the Superior Court, where a decision would trigger his obligation to file a timely notice of appeal. He did not keep in contact with Germain, and did not advise him that he was leaving the Benson firm or provide him with a new address. Further, he misled Germain concerning the status of his appeal. We are satisfied that this conduct constitutes neglect.

It is no less neglect because there was no prejudice. It is settled law that, while lack of prejudice may affect sanction, it has no bearing on the question of violation. *See In re Banks*, 461 A.2d 1038 (D.C.1983); *In re Thompson*, 478 A.2d 1061 (D.C.1984).[4]

Turning to the misrepresentation allegations, we believe the evidence supports the Hearing Committee's conclusion that Landesberg misrepresented to Germain that the firm and not he personally would be representing Germain. Germain testified that he intended to hire the firm, not a sole practitioner. He also testified that Landesberg told him that it made no difference whether he made the check out to Landesberg or to the firm and that Landesberg never told him that he (Landesberg) and not the firm would be representing him. Landesberg did not dispute these facts. Finally, both Germain and Braunstein testified that when Germain learned that Landesberg was no longer with the firm, Germain inquired of Braunstein who at the firm would be handling his case. The Hearing Committee credited all of this testimony.

The clear inference from this testimony is that Germain intended to be represented by a law firm and not a sole practitioner, that he believed that he was retaining a law firm and that, at a minimum, Landesberg did nothing to disabuse Germain of that notion. When a lawyer holds himself out to the public as a member or an employee of a law firm, absent an express understanding to the contrary, it is reasonable to believe that a client understands that he is retaining a law firm, and it is reasonable for the attorney to understand that the client so believes. Nothing transpired in this relationship that would have caused either Landesberg or Germain to have a contrary understanding. Landesberg's actions, comments, and lack of comments misled Germain into believing he was retaining the law firm and not Landesberg individually.

4. Landesberg contends that he was denied due process because the Hearing Committee applied an incorrect legal standard—he describes it as a "reasonable client" legal standard—against which it measured his conduct. Assuming *arguendo*, that the Hearing Committee did apply an improper legal standard, the cases relied upon by Landesberg—*In re Ruffalo*, 390 U.S. 544 (1968) and *In re Colson*, 421 A.2d 1160 (D.C.1979)—do not support his position. They stand for the proposition that an attorney must be advised of the nature of the charges against him in disciplinary proceedings. The petition and specifications in this case clearly spelled out the nature of the charges against Landesberg. Furthermore, again assuming *arguendo* that the Hearing Committee applied the wrong standard, we can apply the proper legal standard to the facts found and supported by substantial evidence to determine whether there was neglect. For the reasons we recited above, it is clear that these facts do amount to neglect. Finally, we do not read the Hearing Committee's decision as Landesberg reads it. The portion of the Hearing Committee's Report with which Landesberg takes issue is in connection with its discussion of the prejudice point, not the elements of neglect. The Hearing Committee was clear in describing the conduct (or, more precisely, the lack of conduct) by Landesberg that formed the basis for its finding of neglect. Put succinctly, the Hearing Committee found that Landesberg did nothing in connection with this case and that doing nothing in these circumstances was neglect. We agree.

The Hearing Committee concluded that Landesberg did not violate DR 9–103(B)(4) when he failed to return Germain's file. Its conclusion was predicated on the fact that "the file was not significant, consisting at most of the trial court decision in the paternity case and [Landesberg's] notes of conversations with Germain and Chozick." Hearing Committee Opinion, 18. But as the Board said in *In re Russell,* 424 A.2d 1087, 1088 (D.C.1980), "no matter how meager, complainant was entitled to immediate return of her file upon request." [5] The Hearing Committee also concluded that there was "ambiguity" surrounding Germain's June request and that the request was not repeated in October. We have some difficulty ascertaining the predicate for that finding. Both Landesberg and Germain testified that in the June telephone conversation Germain asked Landesberg to return the file to the law firm, and that Landesberg declined, telling Germain that he would handle the case. If there was any ambiguity, it could only have come from Germain's apparent acquiescence by silence. But a client should not have to ask twice. Once Germain asked Landesberg to turn the files over to the law firm, Landesberg should have done so. However, as a different finding on this charge would not affect our recommended sanction, we will not upset the Hearing Committee's finding.

Finally, for all the reasons described above, it is clear that Landesberg has failed to return an unearned fee. As we said, he did nothing for Germain. Indeed, he agreed to return the fee on an installment basis but has not done so, asserting that he was holding the fee hostage to settle a potential malpractice suit.

## THE SANCTION

The Hearing Committee recommended that Landesberg be suspended for 45 days.

The Hearing Committee reached its recommended sanction by concluding that the facts of this case fell somewhere between the facts of cases in which the Court has suspended attorneys for 60 days (*In re Taylor,* Docket No. 202–81 (D.C.1985)) and cases in which attorneys were publicly censured (*see, e.g., In re Foster,* Docket No. 84–921 (D.C.1984)). Landesberg filed exceptions to the neglect and fraud findings but did not file exceptions to the finding and conclusion regarding the failure to return an unearned fee. Implicit in his brief and argument is that no suspension is warranted. Bar Counsel has argued that a suspension of 90 days is appropriate.

We believe a suspension is warranted but we believe that 45 days is not an appropriate suspension for several reasons.[6] The Court of Appeals' decisions in *In re Knox,* 441 A.2d 265 (D.C.1982), and *In re Russell,* 424 A.2d 1087 (D.C.1980), give us the appropriate guidance. In *Russell,* Respondent agreed to represent his client in a personal injury case, thereafter took no action for 3 years, and failed to return the client's file when requested. Russell was suspended for 6 months. In *Knox,* Respondent agreed to represent a client in a personal injury case and thereafter did nothing for 9 years. Knox was suspended for 3 months. In both cases the Board and Court found an intentional failure to seek the client's objectives and, in *Russell,* an independent failure to cooperate with Bar Counsel. Here neither exists.

Although we found no such intentional conduct in this case, we did conclude that Landesberg made a material misrepresentation to Germain that affected his choice of lawyers and that Landesberg failed to return Germain's file and likewise failed to

---

5. The quoted passage is the Board's language which the Court quoted in its description of the Board's Report. Although the Court did not explicitly adopt that language as its own, it did so implicitly by adopting the Board's conclusion that Russell violated DR 9–103(B)(4).

6. We are unaware of any case in which an attorney has been suspended in other than 30 day increments. While there is nothing magic about 30 day increments, the Board's obligation is to recommend sanctions which foster consistency. A sanction that differs structurally from any sanction ever imposed can hardly be said to foster consistency.

return his fee for over two years, conceding that he had no right to retain it but nevertheless holding it hostage against the possibility of a malpractice suit. Neither *Knox* nor *Russell* involved violations of this nature. Additionally, Landesberg has been subject to prior discipline for neglect as had Knox while Russell appears not to have been disciplined before.

The only mitigating distinction we have been able to find is that unlike the clients in *Knox* and *Russell*, Germain was not prejudiced by Landesberg's neglect or by his misrepresentation. It is that absence of prejudice which prompts us to conclude that a somewhat shorter suspension is warranted. Weighing the entire mix of facts, we believe that a suspension of 60 days is proper and recommend it to the Court. In addition, we strongly recommend that the Court order reimbursement to Germain of $900 for his fee and $300 interest. This case seems a particularly appropriate one to include such an order, as Landesberg's misrepresentation led Germain to hire a lawyer he otherwise would not have hired, who performed no services for him and who—while conceding that he has no right to retain the fee—has unilaterally withheld repayment for a patently unacceptable reason.

> BOARD ON PROFESSIONAL
> RESPONSIBILITY
> By: /s/ Jeffrey Freund
> JEFFREY FREUND

All members of the Board concur in this Report and Recommendation except Ms. Williams who did not participate.

DATE: FEBRUARY 13, 1986