In re Curtis L. SOLOMON, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 90–1151.

District of Columbia Court of Appeals.

Argued Sept. 25, 1991.
Decided Nov. 27, 1991.

Ross T. Dicker, Asst. Bar Counsel, with whom Frederick B. Abramson, Bar Counsel, Washington, D.C. at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Joan L. Goldfrank, Washington, D.C., for the Bd. on Professional Responsibility.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

PER CURIAM:

This disciplinary matter is before the court on the recommendation of the Board on Professional Responsibility (the Board) that Respondent be suspended from the practice of law in this jurisdiction for thirty days. In excepting to this recommendation, Bar Counsel contends that Respondent should, in addition, be ordered to make restitution in the amount of $1,435, as recommended by a minority of the Board. Respondent has taken no part in the disciplinary proceedings since his appearance before the Hearing Committee and has never contested Bar Counsel's position that restitution should be part of the sanction. We agree with Bar Counsel and the Board minority that restitution is appropriate under the circumstances of this case.

I.

The facts relevant to the restitution issue may be summarized as follows.[1] On November 23, 1985, Ms. Maria del Carmen Cante retained Respondent, Curtis L. Solomon, to represent her in an immigration matter involving her niece and brother. Ms. Cante paid Respondent $1,600 in legal fees, plus a $35 filing fee, for his services. Dissatisfied with Respondent's lack of progress and unable to reach him by telephone, Ms. Cante filed a complaint against Respondent with the Office of Bar Counsel in January of 1987.

In May of 1987, Respondent agreed to reimburse Ms. Cante for the fees that she had paid him; he notified Bar Counsel of this agreement in a letter dated June 8, 1987. In a subsequent letter, he promised to pay her by August 31, 1987. Respondent failed to refund the money at that time, but then promised Bar Counsel that he would repay Ms. Cante in $200 monthly installments. In part because of these rep-

---

1. The full text of the Report and Recommendation of the Board on Professional Responsibility is attached as an Appendix. We agree with the Board in its conclusions with respect to the disciplinary rules violated by Respondent in his dealings with respect to both the Cante and the Mezgebe matters and with the period of suspension recommended by the Board for those violations.

resentations, and in part because Bar Counsel had no evidence that Respondent had violated any Disciplinary Rules,[2] Bar Counsel informed Respondent on December 29, 1987 that it was dismissing Ms. Cante's complaint.[3]

Respondent sent Ms. Cante one check in the amount of $200 in January 1988, but made no further payments. He subsequently petitioned for bankruptcy, but did not notify Bar Counsel of this petition or of his failure to fulfill his promise to repay Ms. Cante.[4] When Ms. Cante informed Bar Counsel of Respondent's failure to make any payments beyond the initial payment of $200, Bar Counsel reinstated his investigation. On March 22, 1989, Bar Counsel served a petition on Respondent, charging him, *inter alia,* with a violation of DR 1-102(A)(5) for his failure to fulfill his promises to Bar Counsel. Both the Hearing Committee and the Board found that this conduct constituted conduct prejudicial to the administration of justice within the meaning of DR 1-102(A)(5). As a sanction for this and the other violations, the Board determined to recommend a thirty-day suspension, but concluded, with three members dissenting, that an order of restitution would not be appropriate. Bar Counsel, who had recommended a sanction of resti-

tution in his post-hearing brief to the Hearing Committee and in his brief before the Board, filed a timely exception.

## II.

■ Our starting point is the simple proposition that Respondent repeatedly assured Bar Counsel that he would repay Ms. Cante, and that the sanction of restitution merely would require Respondent to fulfill his promises. In accepting the Board's recommendation regarding sanctions for failures to fulfill promises made to the Board, we have previously emphasized the importance of honoring commitments made to Bar Counsel. *See In re Harmon,* No. M-79-81 (D.C. Dec. 14, 1981) (three-month suspension for violation of DR 1-102(A)(5) and other disciplinary rules stemming from failure to carry out promises to Bar Counsel to refund fee or perform legal services for client); *see also In re Newsome,* No. 91-77 (Bd.Prof.Resp. June 12, 1979) (public reprimand for failure to keep a promise to Bar Counsel to remit fees to client).[5] As the Board noted in *Newsome,* "[t]he issue is simply whether lawyers are ethically bound to honor their commitments under these circumstances. We believe they are." The importance of honoring commit-

---

2.  Although the Board ultimately concluded that Respondent had violated DR 2-110(A)(2) and DR 9-103(B)(4) by failing to return client property to Ms. Cante and another client of Respondent's, Bar Counsel had no evidence of these violations at the time it dismissed Ms. Cante's complaint.

3.  The penultimate paragraph of the letter stated: We have reviewed all the submissions of the parties. We do not find evidence of misconduct. We were concerned about the amount of fee taken in this matter in light of the lack of progress on the case. We understand that Mr. Solomon was in the midst of changing offices and that it was difficult to reach him. We remind Mr. Solomon that clear communication will often avoid this type of complaint. We have taken into account Mr. Solomon's *offer to repay the fee. If you should not receive your money, please contact this Office* immediately. Failure to refund could be a violation of the Code and we would like to review any such failure. Although the letter was addressed to Mr. Solomon, Bar Counsel in the final two sentences was obviously addressing the complainant.

4.  The bankruptcy proceedings were later dismissed by reason of Respondent's failure to file certain schedules and provide information to the Trustee.

5.  In its brief, the Board asserts that restitution would be inappropriate in this case because it would be inconsistent with the dispositions of *Harmon, Newsome,* and *In re Chopivsky,* No. 86-1538 (D.C. Jan. 29, 1987). We perceive no such inconsistency. Rather than concluding that DR 1-102(A)(5) could not serve as a basis for restitution, the *Chopivsky* court rejected DR 1-102(A)(5) as a basis for sanctions solely because the Board had reached inconsistent conclusions on whether there actually was a violation of the rule. In *Harmon,* the attorney made restitution prior to the Board's determination of proper sanction, making moot any consideration of restitution as a sanction. Only *Newsome,* a public reprimand by the Board and not this court, is factually similar to the instant case, and the Board in *Newsome* failed to address at all the propriety of restitution as a sanction for a violation of DR 1-102(A)(5).

ments made to Bar Counsel is especially important where, as here, Respondent made the promise as an integral part of the conduct of a disciplinary inquiry, on which not only Bar Counsel but the complainant may well have relied.[6]

In its brief, the Board does not question the importance of honoring commitments made to Bar Counsel. Rather, as we understand it, the concern of the Board majority is that restitution is inappropriate because Bar Counsel's charges did not give Respondent sufficient notice that the nature and extent of his services were at issue in this case.

■ We cannot agree that restitution cannot fairly be imposed on the record here. To begin with, the petition instituting formal disciplinary proceedings clearly set forth as one of its bases Respondent's explicit promise to refund the legal fee received from complainant and his failure to do so. Respondent's answer did not contest this liability, but rather asserted an inability to pay.[7] The very nature of the charge—that respondent had failed to make restitution as promised—placed respondent on notice that restitution, and therefore the amount of restitution, was a possible sanction. It is undisputed that Respondent breached a repeated promise to Bar Counsel that he would remit to Ms. Cante a specific dollar amount. Imposing a sanction of restitution in that precise amount, thereby requiring Respondent to

honor his commitment to Bar Counsel and Ms. Cante, could come as no surprise to Respondent.

Furthermore, as counsel for both the Board and Bar Counsel acknowledge, restitution is not a "charge" but a remedy. Here, Respondent received notice of the charges against him; there is no requirement that he also be apprised prior to a hearing of all the possible sanctions that Bar Counsel might recommend, especially where the recommended sanction followed logically from the disciplinary violation.

Even if Respondent somehow was not on notice at his hearing that the nature and extent of his services were at issue, Bar Counsel's post-hearing brief, which recommended restitution as a sanction, gave him such notice. We think it of controlling significance that Respondent did not respond to Bar Counsel's brief, nor has he argued at any other stage of these proceedings that restitution is not an appropriate sanction. Nor indeed has he argued that he was in fact in any way prejudiced by any inadequacy of notice in the presentation of proof at the hearing itself. An attorney who chooses not to participate in a disciplinary proceeding as it progresses through the system designed to protect that attorney's rights cannot reasonably expect that a presumption of prejudice will operate in the attorney's favor.[8] Accordingly, it is

---

**6.** There is no suggestion here that the attorney avoided responsibility for unethical conduct by making a promise to Bar Counsel. *See In re O'Bryant,* 425 A.2d 1313, 1315 (D.C.1981) (attorney should not be able to reduce disciplinary consequences of unethical conduct by "buying off" the complainant). In the instant case, when Bar Counsel dismissed Ms. Cante's complaint, Bar Counsel did not think he had found evidence of a violation of the Code; Bar Counsel was not yet aware that Respondent had *failed to return client property.*

**7.** As the Board recognizes in its Report, the basis for the disciplinary violation is not non-payment per se, but rather the totality of the conduct of Respondent with respect to attempting to fulfill the promise, with particular reference to the failure to contact Bar Counsel at any time. The Hearing Committee made a similar observation in its report: "The violation is not

solely based on his failure to refund the fees to Ms. Cante given his alleged financial inability to make the refund but more importantly his cavalier disregard of the promise in failing to notify Bar Counsel of his subsequent inability to make the refund. An attorney cannot have such disregard for the legal professional responsibility bestowed by a license to practice law." No argument is made to us that restitution is inappropriate because of any present inability on Respondent's part to repay. That would present a different question not now before us.

**8.** Bar Counsel makes no argument to us that interest should be imposed upon the fee to be repaid, as suggested in the Board's minority report. For this reason, and because it appears that Respondent did perform some compensable services to which any such interest might be applied, we here require the restitution only of the fee itself.

ORDERED that Respondent, CURTIS L. SOLOMON, be and he hereby is suspended from the practice of law in the District of Columbia for thirty days, effective thirty days from the date of this opinion, with reinstatement thereafter subject to the condition that Respondent submit to Bar Counsel evidence of restitution in full to complainant Maria del Carmen Cante of the sum of $1,435.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

### BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of CURTIS L. SOLOMON, ESQ., Respondent.

Bar Docket Nos: 31–87; 89–88

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility for review of the Report of Hearing Committee Number Five, which found that Respondent violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice) in regard to one client (Ms. Cante), and DR 2–110(A)(2) (withdrawing from employment without delivering to client all papers and property to which client was entitled) in regard to two clients (Ms. Cante and Mr. Mezgebe). The Board agrees with the Hearing Committee that Respondent violated the foregoing disciplinary rules. The Committee did not reach the question whether Respondent also violated DR 9–103(B)(4) (failing to promptly deliver to client the properties in possession of lawyer which client is entitled to receive). The Committee found it unnecessary to reach that question because it found violations of DR 2–110(A)(2) based on the same conduct and concluded that the finding of violations of DR 9–103(B)(4) would not affect its recommendation as to sanction. The Board has concluded that DR 9–103(B)(4) was also violated by reason of the same conduct which the Committee found to constitute violations of DR 2–110(A)(2).

The majority of the Hearing Committee recommended a sixty-day suspension with no restitution to Ms. Cante. In a separate opinion as to sanction, the Hearing Committee Chair concluded that Respondent should be suspended for thirty days and required to make restitution to Ms. Cante in the amount of $1,435 (the balance of the retainer and costs paid by Ms. Cante less the $200 repayment Respondent made to her). In his brief to the Board, Bar Counsel does not take exception to the recommendation for a sixty-day suspension and urges in addition that Respondent be ordered to make restitution to Ms. Cante in the amount of $1,435. For the reasons set forth below, the Board recommends that Respondent be suspended from the practice of law for a period of thirty days.

## I. BACKGROUND

### Count One

On November 23, 1985, Ms. Maria del Carmen Cante retained Respondent, a member of the District of Columbia Bar, concerning an immigration matter with regard to her niece and brother. Ms. Cante paid Respondent $1,600 in legal fees for the two matters, plus $35 for the filing fee for one of the matters. During the Fall of 1985, Ms. Cante also provided Respondent with the necessary documents to process the immigration matters, including the niece's birth certificate, the niece's certificate of marriage, "certificate of the police," letters of recommendation from the niece's employer, and Ms. Cante's brother's birth and marriage certificates.

Respondent failed to return Ms. Cante's telephone calls beginning October 7, 1986, and she filed a complaint with Bar Counsel concerning Respondent in January 1987. In April 1987, Respondent scheduled a meeting with Ms. Cante at the INS, but the two never met. After April 1987, Respondent no longer considered himself to be Ms. Cante's attorney. In May of 1987, Respondent agreed to reimburse Ms. Cante for the fees which she had paid him; he notified Bar Counsel of this agreement in a letter

dated June 8, 1987. In a subsequent letter, he promised to pay her by August 31, 1987. Respondent failed to refund the money by that time, but then promised Bar Counsel that he would repay Ms. Cante in $200 monthly installments. Bar Counsel then proceeded to dismiss the complaint against Respondent "in part" because of his promise.[1] Respondent sent Ms. Cante one check in the amount of $200 in January 1988; he failed to make any further payments.

Respondent also failed to return all of the documents that Ms. Cante had provided to him. Although in September 1988, he did return several documents to her, he failed to return her niece's birth and marriage certificates and her niece's child's birth certificate. After promising Bar Counsel that he would refund to Ms. Cante the money she had paid him, Respondent filed a petition for bankruptcy. He never notified Bar Counsel, however, of any financial inability to refund to Ms. Cante the legal fees and costs as promised. Respondent's bankruptcy petition was subsequently dismissed and the estate closed by reason of Respondent's failure to file schedules of assets and liabilities and provide information to the Trustee. *See* Order of Dismissal (May 24, 1989) and Order Closing Estate (Aug. 15, 1989) in *In re Curtis L. Solomon*, Case No. 88–00266, United States Bankruptcy Court for the District of Columbia.

### Count Two

In April or May 1987, Alem Mezgebe retained Respondent to represent him before the INS in obtaining alien permanent resident status. Mr. Mezgebe provided Respondent with the necessary documents to file with the INS. On May 21, 1987, after Respondent filed a petition with the INS on behalf of Mr. Mezgebe, Respondent returned the documents to him. Mr. Mezgebe, however, provided Respondent with additional documents in order to prepare for a new hearing scheduled for September 1987 before the INS. These documents consisted of a release, affidavits from neighbors and friends regarding Mr. Mezgebe's marital status, a PEPCO bill, and correspondence addressed to him and his wife.

Mr. Mezgebe moved his residence in July 1987. He contacted Respondent, requesting that Respondent keep the INS apprised of his residence. Mr. Mezgebe was asked to appear at an INS hearing on September 9, 1987, to respond to questions about the truthfulness of statements in his application because a letter sent by the INS to Mr. Mezgebe at his old address had been returned, apparently as a result of Respondent's failure to notify the INS about the change of address. Respondent rescheduled the September 9 hearing to October 29 because the earlier date was inconvenient for both him and Mr. Mezgebe. Mr. Mezgebe later requested that Respondent reschedule the October 29 hearing to a later date. Respondent apparently failed to do so.

On January 31, 1988, Mr. Mezgebe wrote to Respondent expressing his displeasure with Respondent's lack of communication with him. On February 16, 1988, Mr. Mez-

---

1. In paragraph six of the specification of charges relating to Respondent's representation of Ms. Cante, Bar Counsel stated: "On December 27, 1987, complainant's allegations against respondent were dismissed *in part* because of respondent's promise to refund the legal fee received from complainant." (Emphasis added.) At the time Bar Counsel dismissed Ms. Cante's complaint, Bar Counsel was not aware of evidence, which came to light after Respondent failed to fulfill his promise, that Respondent had violated DR 2–110(A)(2) and DR 9–103(B)(4). *See In re O'Bryant*, 425 A.2d 1313, 1315 (D.C.1981) (respondent should not be allowed to reduce disciplinary consequences of unethical conduct by "buying off" complainant);

*compare In re Chopivsky*, No. 86–1538 (D.C.1987) (investigation of alleged violation of DR 2–110(A)(3) (failure to return unearned fee) stayed by reason of respondent's promise to make repayment); *In re Harmon*, Doc. No. 350–79 (Bd.Pro.Resp., Apr. 23, 1981) at 2–3, *affirmed*, No. M–79–81 (D.C.1981) ("The action by Bar Counsel in seeking to further the objectives of respondent's client by obtaining [respondent's] assurance that he would immediately pursue her claim or facilitate her obtaining other counsel, rather than filing formal charges against him, was, in our view, eminently sensible under the particular circumstances of this case, even though a charge of neglect might have been demonstrable.").

gebe terminated his relationship with Respondent and requested that all of his papers be returned. Respondent never responded to Mr. Mezgebe's letter of February 16, 1988, nor did he return to Mr. Mezgebe his documents.

## II. SUMMARY OF THE CHARGES

The petition instituting formal disciplinary proceedings alleged that Respondent had committed violations of three disciplinary rules, as follows:

A. DR 1–102(A)(5), conduct prejudicial to the administration of justice by failing to fulfill his promise to Bar Counsel to refund Ms. Cante's legal fees and costs totalling $1,635.

B. DR 2–110(A)(2), failing to return all the documents which his clients had provided to him after his representation was terminated.

C. DR 9–103(B)(4), failing to promptly return his clients' property after the clients requested its return.

## III. VIOLATIONS

The Board has reached the following conclusions concerning Respondent's violations of the disciplinary rules.

### A. *Conduct Prejudicial to Administration of Justice—DR 1-102(A)(5)*

The Hearing Committee found by clear and convincing evidence that Respondent had violated DR 1–102(A)(5) by failing to fulfill his promise to Bar Counsel to refund Ms. Cante's legal fees and costs in the amount of $1,635. Respondent promised on three separate occasions that he would refund the moneys paid by Ms. Cante, yet he only made one $200 payment. Failure to fulfill a promise to Bar Counsel constitutes conduct prejudicial to the administration of justice, and thus a violation of DR 1–102(A)(5). *See In re Chopivsky,* No. 86–1538 (D.C. Jan. 29, 1987); *In re Harmon,* No. M–79–81 (D.C. Dec. 14, 1981).

Respondent was notified at the time he made the promise to repay Ms. Cante that failure to do so could result in disciplinary proceedings being brought against him. Although Respondent filed for bankruptcy after making the promise to reimburse Ms. Cante, he neglected to inform Bar Counsel of this development. Respondent stated in his testimony before the Hearing Committee: "Unfortunately, there were a lot of things going on and what I should have done was to contact the Bar Counsel and ask for a revision.... So what I should have done is advise your office that I needed to work out a modification of that plan, which I didn't do." Tr. 152. Respondent is correct in recognizing that it was his duty to inform Bar Counsel of his financial difficulties, and that he did not fulfill this duty. Additionally, Respondent had already broken his earlier promises to Ms. Cante and Bar Counsel that he would refund the fee before August 31, 1987.

The Board agrees with and adopts the conclusion of the Hearing Committee that Respondent's conduct as set forth above constituted conduct prejudicial to the administration of justice within the meaning of Dr 1–102(A)(5).

### B. *Failure to Return Documents After Representation is Terminated— DR 2-110(A)(2)*

Bar Counsel alleged, and the Hearing Committee concluded, that Respondent failed to return all the documents which each of his clients had provided to him. The Hearing Committee credited, as does the Board, both Ms. Cante's and Mr. Mezgebe's testimony that Respondent did not return certain of their documents. As each client was entitled upon termination of the representation to the return of all documents provided, Respondent's failure to do so was a violation of DR 2–110(A)(2). *See In re Landesberg,* 518 A.2d 96 (D.C.1986); *In re Russell,* 424 A.2d 1087 (D.C.1980).

The Board agrees with and adopts the conclusion of the Hearing Committee that Respondent's conduct violated DR 2–110(A)(2).

### C. Failure to Promptly Return Clients' Property—DR 9-103(B)(4)

The Hearing Committee correctly noted that the misconduct underlying both the DR 2-110(A)(2) and the DR 9-103(B)(4) charges was the same. The Committee did not reach the question whether Respondent's conduct constituted violations of DR 9-103(B)(4) because it was of the view that its finding would not affect its recommendation as to sanction. While the Board agrees that the sanction is not affected, it is clear that Respondent's conduct violated DR 9-103(B)(4) as well as DR 2-110(A)(2). See In re Waller, 524 A.2d 748 (D.C.1987).

### IV. RECOMMENDED SANCTION

In the proceeding on sanctions before the Hearing Committee, Bar Counsel urged that Respondent be suspended for thirty days and ordered to make restitution to Ms. Cante in the amount of $1,635. The majority of the Hearing Committee, however, concluded that Respondent's violations were serious and his contrition insufficient. The majority therefore recommended that Respondent be suspended for sixty days. The majority further concluded that Respondent should not be ordered to make restitution to Ms. Cante since he performed some work for her. In a separate opinion on sanction, the Hearing Committee Chair recommended that Respondent be suspended for thirty days and required to make restitution.

As this matter comes to the Board, Bar Counsel has not taken exception to the majority's recommendation of a sixty-day suspension, but Bar Counsel urges that Respondent be ordered to make restitution to Ms. Cante in accordance with the views stated by the Hearing Committee Chair in her separate opinion as to sanction. See Bar Counsel's Brief to the Board (Dec. 4, 1989) at 2, 5-9.

#### A. Recommended Period of Suspension

As noted above, the Hearing Committee majority recommended a sixty-day suspension. Applicable precedents suggest, however, that a thirty-day suspension is more appropriate. In re Chopivsky, No. 86-1538 (D.C. Jan. 29, 1987), for example, involved multiple rule violations and two clients, as does the present case. One of the violations in Chopivsky, as in the case now before the Board, was the failure to refund a fee to a client after promising Bar Counsel to do so. In Chopivsky the Court ordered a thirty-day suspension. The Hearing Committee majority stated that the pattern of conduct evidenced by Respondent warrants a longer period of suspension than in Chopivsky. However, Respondent has no history of prior discipline and the Board finds that his conduct is sufficiently similar to that involved in Chopivsky that a thirty-day suspension is required. See Rule XI, § 9(g).

The Board is not persuaded by the Hearing Committee majority's reliance on In re Taylor, No. 83-1027 (D.C. Apr. 24, 1984). Taylor involved a violation of DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), among other violations. There is no such charge of dishonesty in the present case. Further, the respondent in Taylor had a history of prior discipline.

Based on the above analysis, the Board recommends that Respondent's suspension be for a period of thirty days.

#### B. Restitution

Bar Counsel did not charge Respondent with violating DR 6-101(A)(3) (neglect of a legal matter entrusted to him), DR 7-101(A)(2) or (3) (intentional failure to seek client's lawful objectives; intentional failure to carry out contract of employment). Nor did Bar Counsel charge Respondent with violating DR 2-106(A) (collecting an illegal or clearly excessive fee) or DR 2-110(A)(3) (failure to return an unearned fee). Our review of the record convinces us that the specification of charges did not adequately place Respondent on notice that the nature and extent of the services he performed for Ms. Cante were at issue in this case. Bar Counsel's representations at the hearing did not indicate that Bar Counsel would seek restitution either on the

theory that Respondent's promise was an implied admission that the fee was unearned or on the theory that Respondent did no meaningful work for Ms. Cante. Bar Counsel first indicated that he was seeking restitution in his post-hearing brief to the Hearing Committee. In so doing, Bar Counsel relied on *In re Chopivsky*, No. 86-1538 (D.C.1987), which Bar Counsel characterized as a case in which respondent "was ordered to pay his client the unearned fee." *See* Bar Counsel's Proposed Findings of Fact, Conclusions of Law And Recommended Didsipline [sic]" (Aug. 11, 1989) at 23-24.

The Hearing Committee majority declined to order Respondent to make restitution to Ms. Cante, stating that Respondent "did perform some work" for her. Report of Hearing Committee (Oct. 30, 1989) at 13. The record evidence regarding the services Respondent performed for Mr. Cante is sparse, perhaps because that issue was not relevant to the charges relating to failure to return documents or to the charge of failure to fulfill the promise to repay the fee, which failure Respondent did not dispute. Indeed, his excuse was that he was financially unable to fulfill the promise, and the Hearing Committee stated that its finding of a violation of DR 1-102(A)(5) "is not solely based on [Respondent's] failure to refund the fees to Ms. Cante given his alleged financial inability to make the refund but more importantly his cavalier disregard of the promise in failing to notify Bar Counsel of his subsequent inability to make the refund." Report of Hearing Committee (Oct. 30, 1989) at 11. Even though the subject was not explored in depth, we think the Hearing Committee majority was correct to focus on the evidence regarding the nature of the work Respondent performed in considering whether to order restitution. The Committee made no finding as to whether Respondent filed any papers with the INS on behalf of Ms. Cante's brother or niece. Although Respondent agreed to meet with Ms. Cante at the INS in April of 1987, the two never actually met on that occasion. However, Respondent testified that he did meet with Ms. Cante on other occasions and spoke with her by telephone. Tr. 142-43; 158-60. Although the matter is not free from doubt, we conclude that there is substantial evidence in the record as a whole to support the Hearing Committee's finding that Respondent did perform some work for Ms. Cante.

However, even if Respondent did perform some work for Ms. Cante, that would not necessarily preclude an order of restitution. In the case relied upon by Bar Counsel in support of his request for restitution, *In re Chopivsky*, the client, Mrs. Williams, had hired respondent to help obtain an early parole hearing date for her son. Respondent was ordered to refund the entire fee paid to him in spite of the fact that he visited the client's son in prison. Though he performed that small amount of work, restitution was nevertheless deemed appropriate. Similarly, the Board has recommended restitution in other cases where a lawyer has done some *de minimis* work that did not rise to a meaningful level. *In re Dory*, Doc. No. 128-85 (Bd.Pro.Resp., Mar. 30, 1987) at 13 (lawyer "made nonmeaningful gestures" on behalf of a client), *affirmed*, 528 A.2d 1247 (D.C.1987). *See also In re Roundtree*, 467 A.2d 143 (D.C.1983) (full restitution ordered in spite of fact that attorney prepared and filed papers in an uncontested divorce, where the action was dismissed due to neglect by attorney); *In re Taylor*, 511 A.2d 386 (D.C.1986) (same).

In each of these cases, however, the respondent was charged with disciplinary rule violations that squarely placed in issue the nature and extent of the legal work he performed. Such was not the case here, as the Hearing Committee majority recognized. *See* Report of Hearing Committee (Oct. 30, 1989) at 13. Thus, Respondent's presentation at the hearing was not directed to that subject. Rather, Respondent's presentation focused on the documents he claimed he had returned. Tr. 129-38; 142-44. Respondent began his testimony by stating, "Well, primarily I'm responding to the indication by Ms. Cante that she has not received all her documents." Tr. 142. In response to an inquiry from the lay

member of the Hearing Committee, Respondent testified that he had agreed to return the fee to Ms. Cante because he felt that "was the best, the easiest way to just resolve the matter...." Tr. 162. The colloquy continued as follows:

MR. TAYLOR: You did perform some services for her, which you didn't feel you wanted to collect for even if it wasn't the full amount?

\* \* \* \* \* \*

THE WITNESS: I would rather—Instead of having the hassle, I would rather just return it all and be done with it. That was the idea. That was my feeling. If there's some discrepancy or if there's reason, rather than get in a long, drawn-out thing, I try and accommodate the client. And since she was not satisfied, I said, okay, well, let me just return everything and be done with it. That's the way I try to do it if I can.

\* \* \* \* \* \*

MR. TAYLOR: ... [Y]ou seem to be rather vague as to whether or not anything was done on her behalf. You have no record in your files that anything actually was done. She claimed that she investigated the Immigration Service and found that nothing had been filed. The implication of your willingness to return the entire fee is that you agree with that, otherwise you would have a right to claim some of the fee; is that a fair assumption?

THE WITNESS: Well, it was certainly correct that I would have a right—I felt, based on what was done, that I had a right to some of the fee. But my feeling is that I didn't—Basically, you know, I didn't need the hassle. So if this would resolve it, fine. All being well, let's get on with it. That's the approach that I take. I don't like to get into long, drawn-out confrontations about what is this and that. If a client says, "If you return it, that's fine," I would rather do

that than to get into "Well, how much have you earned? What did you do here? How many hours of this and that." That is my approach to the situation. [Tr. 163–65.]

Thus, the Hearing Committee properly did not rely upon Respondent's promise as an admission that no part of his fee had been earned. Nor do we think in the circumstances of this case it would have been appropriate to regard Respondent's conduct as a waiver of his right to argue in response to a charge under, for example, DR 2–110(A)(3) (failure to return unearned fee), had such a charge been brought, that all or part of the fee was "earned." *Compare In re Landesburg*, No. 86–427 [518 A.2d 96] (D.C.1986) (respondent conceded he had no right to retain fee but withheld repayment as leverage in negotiations relating to client's malpractice claim).

The Hearing Committee Chair, in her separate opinion as to sanction, expressed the view that Respondent's promise to Ms. Cante and Bar Counsel was *itself* a sufficient basis to order restitution. Regardless of how much work Respondent performed, the Chair pointed out, Respondent clearly made repeated promises to refund $1,635 to Ms. Cante. In fact, he refunded only $200. The Hearing Committee Chair stated, "He should be required to keep his promise." Separate Opinion As To Sanction (Oct. 25, 1989) at 3. While the Board fully agrees that Respondent should be required to keep his promise, it does not follow that the fact of Respondent's promise, in and of itself, provides a basis for ordering restitution, although it may provide Ms. Cante with a meritorious civil action to recover from Respondent the amount due pursuant to his promise.[2]

In this case Respondent contended that his failure to fulfill his promise was due to his financial inability to do so. The Hearing Committee was understandably reluctant to find a violation of DR 1–102(A)(5) and hence liability for discipline where Respondent's failure to fulfill his promise was

2. The facts of this case, when fully developed, may also establish Ms. Cante's entitlement to be made whole from the Clients' Security Trust

Fund for any financial loss she has suffered. *See* D.C.Bar Rule XII.

due to his financial inability to do so. Thus, like the Hearing Committee, we do not premise the DR 1–102(A)(5) violation here solely on Respondent's failure to fulfill his promise. *See* Section III.A., above. No solicitude for Respondent's financial plight, however, would deter us from ordering restitution if we felt that imposition of that sanction was warranted by the record.

On this record, however, we do not believe that an order of restitution is appropriate. In our view, the sanction of restitution should be imposed only after a full and fair hearing with adequate notice that the nature and extent of the services performed by the respondent are in issue. If, after such a hearing, the finder of fact determines that the nature and extent of those services were such that restitution is warranted, then an order of restitution would be an appropriate sanction. *See, e.g., In re O'Donnell*, 517 A.2d 1069 (D.C.1986); *In re Anderson*, No. 86–657 (D.C.1986).[3] In this case, however, there was no such notice, and there was no such hearing. To the degree there was a finding, it was that Respondent did perform some legal services for Ms. Cante.

Although it is both regrettable and frustrating, the fact is that Respondent was not fairly placed on notice, either by the specification of charges or at the hearing, that the nature and extent of the services he performed for Ms. Cante were in issue. If, after a full and fair hearing with adequate notice, the evidence showed that Respondent's level of effort on behalf of Ms. Cante was such that an order of restitution was warranted or that Respondent's promise to repay the fee was an admission that the fee was unearned, this Board would not hesitate to recommend that the Court both suspend Respondent from the practice of law for a period of thirty days and order Respondent to make restitution. On this record, however, we have concluded that an order of restitution would not be appropriate.

## V.  CONCLUSION

For the reasons set forth above, the Board recommends that the Court enter an order suspending Respondent from the practice of law for a period of thirty days.

Dated: Sept. 11, 1990

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ George W. Miller

George W. Miller

Chairman

Messrs. Cohen, Donnenfeld and Williams and Ms. Wynn concur in this Report and Recommendation; Mr. Fox has filed a concurring and dissenting opinion in which Mr. Freund and Ms. Kaiser join; Mr. Carter did not participate.

DISTRICT OF COLUMBIA
COURT OF APPEALS

BOARD OF PROFESSIONAL
RESPONSIBILITY

In the Matter of CURTIS L. SOLOMON, ESQ., Respondent.

Bar Docket Nos. 31–87; 89–88

CONCURRING AND DISSENTING REPORT AND RECOMMENDATION OF HAMILTON P. FOX, III

I agree with the Board's finding that Respondent has violated DR 1–102(A)(5), engaging in conduct prejudicial to the administration of justice; DR 2–110(A)(2), failing to return documents to his clients after his representation was terminated; and DR 9–103(B)(4), failure to return promptly clients' property. I also agree with the recommended sanction of thirty-

---

3.  Such a hearing and such a finding might have been possible in this case if Bar Counsel had, for example, charged Respondent with a violation of DR 2–110(A)(3) (failure to return an unearned fee) and had proved by clear and convincing evidence that the fee paid by Ms. Cante was "unearned." However, Bar Counsel charged Respondent with violations of DR 1– 102(A)(5) (for failing to keep his promise to Bar Counsel) and DR 2–110(A)(2) and 9–103(B)(4) (for failing to return documents). Bar Counsel then asked the Hearing Committee, after the record was closed, to order restitution on the ground that the fee paid by Ms. Cante was "unearned." This the Hearing Committee majority properly declined to do.

day suspension, but I disagree that Respondent should not be required to make restitution to Ms. Cante in the amount of $1,435 plus interest at seven percent, compounded annually, to run from November 23, 1985, the date Ms. Cante paid Respondent $1,635.00 in legal fees and filing fees. I would condition his reinstatement on his making full restitution.

In January, 1987, Ms. Cante filed a complaint with Bar Counsel alleging, in essence, that Respondent had neglected the matter for which she had retained him in November, 1985. Respondent chose not to contest this claim, but rather on three separate occasions promised Bar Counsel that he would repay to Ms. Cante the legal fees that she had paid him. In part in return for this promise, Bar Counsel proceeded to dismiss the complaint against Respondent. Respondent made one $200 payment to Ms. Cante in January, 1988, and then failed to make any further payments.

Bar Counsel then instituted the current proceedings, alleging that Respondent's failure to live up to his promise to make restitution to Ms. Cante constituted conduct prejudicial to the administration of justice. For some reason, Bar Counsel did not charge neglect or failure to return an unearned fee. Thus, it appears that the Bar Counsel made two mistakes. First, he dismissed Ms. Cante's complaint based on Respondent's promise to make restitution before Respondent had actually done so. Second, when Respondent failed to live up to his promise, Bar Counsel elected not to charge neglect or failure to return an unearned fee when he reopened Ms. Cante's matter.

The Board seizes upon the second mistake to justify its refusal to order restitution. The Board says, "Our review of the record convinces us that the specification of charges did not adequately place Respondent on notice that the nature and extent of the services he performed for Ms. Cante were at issue in this case." This language suggests that at the heart of the Board's reasoning is a due process consideration. The notion seems to be that unless the specification of charges informs a Respondent that the nature and extent of his services are at issue, the remedy of restitution is not available. This overly punctilious approach to the niceties of pleadings is reiterated in footnote 3 of the Board's report. It says that since Bar Counsel failed to charge Respondent with one of the violations that relates directly to fees, the Board will not order him to make restitution of those fees. This is despite the fact that the initial complaint in this case was about Respondent's keeping a fee that he did not earn, that Respondent elected not to contest that charge but instead agreed to settle it, that Respondent failed to live up to his promise to make restitution, and that the failure to make restitution resulted directly in the charge that was brought against Respondent.

To the extent that the Board's position is premised on an absence of notice in the charges, I believe the Board is being unduly technical. Charges must be sufficiently specific so that people can defend against them, but I am aware of no rule of law which says that charges must specify the potential remedies which may be employed if they are proven. Since restitution is a remedy, and not a violation, I am unmoved by the fact that the charges make no mention of the possibility that if they are proven, restitution may be ordered.

The Court's rules seem consistent with the approach I advocate. Rule XI, Section 3(b) provides: "When imposing discipline, the Court or the Board may require an attorney to make restitution either to the persons financially injured by the attorney's conduct or to the Client's Security Trust Fund ... or both, as a condition of probation or of reinstatement." This rule says nothing about whether the petition must charge a particular violation. Its focus is instead on the attorney's conduct and whether that conduct financially injures anyone. I have no difficulty in concluding that when a lawyer promises to make restitution to his client, and fails to live up to that promise, he has financially injured that client.

Respondent promised on three separate occasions to make restitution to Ms. Cante. In consideration for his promise, Bar Counsel elected not to proceed on the complaint that Ms. Cante had filed. Respondent's failure to keep his promise is proven, the Board agrees, by clear and convincing evidence. Respondent was aware that Ms. Cante's initial complaint was, in essence, that he took her money and failed to provide her with significant legal services. He chose not to contest this claim, but rather to promise to pay the money back. I can see no reason why Respondent should not be required to live up to that promise.

There may be some notion underlying the Board's reluctance to order restitution that Respondent cannot afford to make restitution. He did seek, unsuccessfully, a discharge in bankruptcy. Nevertheless, I find it difficult to believe that he cannot afford to make reimbursement. The sum in question (without interest) is less than $1,500. Raising such a sum is not beyond the means of most persons, much less most lawyers. It is certainly conceivable that making restitution will impose financial hardship on Respondent, but I find that fact irrelevant. I suspect that making the $1,600 payment may well have imposed a financial hardship on Ms. Cante, so I am not moved if in fact it imposes a hardship on Respondent.[1] Moreover, if in fact restitution were beyond Respondent's needs, that fact would seem to be one that would naturally be raised by Respondent in his defense to the charge that he failed to live up to his promise to make restitution. Yet the Hearing Committee made no finding that Respondent's failure to honor his promise of restitution was due to his impecunious condition.

I also believe that in this case, and in every other case in which the Board recommends restitution, that it is not sufficient for Respondent simply to return the money paid to him by his client. That money ought to be returned at a reasonable rate of interest, say seven percent a year compounded annually, so that the client is in fact made whole. Lawyers are not entitled to interest-free loans from their clients, and clients are entitled to have the full value of their money refunded.

Moreover, in light of Respondent's track record, I would also recommend imposition of the condition that Respondent not be reinstated until he can demonstrate that he has made restitution to Ms. Cante. See Rule XI, Section 3(b).

It seems to me that at times the disciplinary system's focus is too much on the protection of lawyers and not enough on what I consider to be the primary goal of the system, the protection of the consumers of legal services. In my judgement, our focus should be on doing what we can to assure that clients are not hurt. This may be hard on lawyers, but when we consider the question of sanction, we are by definition dealing with lawyers who have failed to live up to their ethical obligations. In balancing our concern for the plight of the lawyers who appear before us—a better educated, generally privileged class who have, nevertheless, failed to live up to their obligations—versus the interests of their clients—frequently in the cases that appear before us, a much less favored class of society—I have no problem in striking the balance in favor of the clients.

In this case, for example, Ms. Cante paid to Respondent the sum of $1,635 almost five years ago. Respondent promised to pay the money back more than three and one half years ago. If the Board's recommended sanction is imposed, following another lapse of time while the Court of Appeals considers this case, Ms. Cante will still not have returned to her the fees that she paid to Respondent, except for the one $200 payment. Instead, after many years have lapsed, the Board offers Ms. Cante the cold comfort of initiating litigation,

---

1. At one point Respondent promised to make monthly payments of $200. Such payments are comparable to car payments and are much less than normal residential rental or mortgage payments. If making these payments would mean that Respondent could not make his car or rental payments, he might have to give up his car or move to a less expensive dwelling.

which may well be impractical given the costs of litigation and the amount in question, or making application to the Client Security Fund to have her money returned. Even if Ms. Cante is successful in obtaining her money from the Client Security Fund, I see no reason why that fund should have to pay an obligation which belongs to Respondent and which he has three times promised to pay. I conclude, therefore, that when in a case, such as this, the facts reveal an obligation on the part of the Respondent to return funds to a client, the Board should recommend, and the Court should order absent some showing by the Respondent that such an order is not appropriate, that as part of the sanction, the client be made whole.

/s/ Hamilton P. Fox, III
Hamilton P. Fox, III

Date: September 11, 1990

Ms. Kaiser and Mr. Freund join in this concurring and dissenting opinion.